<u>**NOT FOR PUBLICATION**</u>

**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY**

| | |
|---|---|
| ETHICON, INC. and MEDICAL DEVICE BUSINESS SERVICES, INC., <br><br> Plaintiffs, <br><br> v. <br><br> BRANDON RANDALL, <br><br> Defendant. | Case No. 2:20-cv-13524 (BRM) (JBC) <br><br> **OPINION** |

**MARTINOTTI, DISTRICT JUDGE**

Before this Court is a Motion for Reconsideration filed by Defendant Brandon Randall ("Randall"). (ECF No. 55.) Plaintiffs Ethicon, Inc. ("Ethicon") and Medical Device Business Services, Inc. ("DePuy Synthes" and collectively with Ethicon, "Plaintiffs") opposed the motion. (ECF No. 60.) Randall filed a Reply. (ECF No. 61.) Having reviewed the parties' submissions filed in connection with the motion and having declined to hold oral argument pursuant to Federal Rule of Civil Procedure 78(b), for the reasons set forth below and for good cause having been shown, Randall's Motion for Reconsideration is **DENIED**.

**I.   BACKGROUND**

The underlying facts are set forth at length in the Court's May 28, 2021 Opinion (the "May Opinion") (ECF No. 53), which the Court incorporates by reference. The relevant procedural history is summarized as follows.

In the Order (the "May Order") (ECF No. 54) accompanying the May Opinion, the Court granted Plaintiffs' Motion for Preliminary Injunction (ECF No. 2) and enjoined Randall "for a

period of eighteen (18) months from the date this preliminary injunction goes into effect," from assuming the Head of Robotics position or any other position with Smith & Nephew, Inc. ("Smith & Nephew") "in which he could disadvantage Plaintiffs or advantage Smith & Nephew, Inc., by the disclosure or use of confidential information to which he had access while employed with the Plaintiffs." On June 11, 2021, Randall filed a Motion for Reconsideration as to the May Order. (ECF No. 55.) Randall requests the Court modify the restriction period set forth in the May Order, arguing the 18-month restriction period should start running upon the termination of Randall's employment with Plaintiffs on September 11, 2020, rather than the date the preliminary injunction takes effect. (ECF No. 55-1 at 1–2.) On July 2, 2021, Plaintiffs opposed Randall's motion. (ECF No. 60.) On July 9, 2021, Randall filed a Reply. (ECF No. 61.)

## II.  LEGAL STANDARD

While not expressly authorized by the Federal Rules of Civil Procedure, motions for reconsideration are proper pursuant to this District's Local Civil Rule 7.1(i) if there are "matters or controlling decisions which counsel believes the Judge . . . has overlooked." L. Civ. R. 7.1(i). Courts "view such a motion as the functional equivalent of a Rule 59(e) motion to alter or amend a judgment." *Holsworth v. Berg*, 322 F. App'x 143, 146 (3d Cir. 2009) (quoting *Fed. Kemper Ins. Co. v. Rauscher*, 807 F.2d 345, 348 (3d Cir. 1986)) (internal quotation marks omitted). The motion is an "extremely limited procedural vehicle" and "an extraordinary remedy that is granted 'very sparingly.'" *Andreyko v. Sunrise Senior Living, Inc.*, 993 F. Supp. 2d 475, 477 (D.N.J. 2014) (citations omitted). Motions for reconsideration "are not to be used as an opportunity to relitigate the case; rather, they may be used only to correct manifest errors of law or fact or to present newly discovered evidence." *Blystone v. Horn*, 664 F.3d 397, 415 (3d Cir. 2011) (citing *Howard Hess Dental Labs., Inc. v. Dentsply Int'l Inc.*, 602 F.3d 237, 251 (3d Cir. 2010)).

> As such, a party seeking reconsideration must satisfy a high burden, and must "rely on one of three major grounds: (1) an intervening change in controlling law; (2) the availability of new evidence not available previously; or (3) the need to correct clear error of law or prevent manifest injustice."

*ABS Brokerage Servs. v. Penson Fin. Servs., Inc.*, Civ. A. No. 09-4590, 2010 U.S. Dist. LEXIS 83601, at *15 (D.N.J. Aug. 16, 2010) (quoting *N. River Ins. Co. v. CIGNA Reins. Co.*, 52 F.3d 1194, 1218 (3d Cir. 1995)). The Third Circuit has defined "new evidence" for purposes of a motion for reconsideration as follows:

> [N]ew evidence, for reconsideration purposes, does not refer to evidence that a party submits to the court after an adverse ruling. Rather, new evidence in this context means evidence that a party could not earlier submit to the court because that evidence was not previously available. Evidence that is not newly discovered, as so defined, cannot provide the basis for a successful motion for reconsideration.

*Blystone*, 664 F.3d at 415–16 (citations omitted). Additionally, a court commits clear error of law "only if the record cannot support the findings that led to the ruling." *ABS Brokerage*, 2010 U.S. Dist. LEXIS 83601, at *15 (citing *United States v. Grape*, 549 F. 3d 591, 603–04 (3d Cir. 2008)).

> Thus, a party must do more than allege that portions of a ruling were erroneous in order to obtain reconsideration of that ruling; it must demonstrate that (1) the holdings on which it bases its request were without support in the record, or (2) would result in "manifest injustice" if not addressed.

*Id.* (citations omitted). "Mere 'disagreement with the [c]ourt's decision' does not suffice." *Id.* (quoting *P. Schoenfeld Asset Mgmt. LLC v. Cendant Corp.*, 161 F. Supp. 2d 349, 353 (D.N.J. 2001)); *see also United States v. Compaction Sys. Corp.*, 88 F. Supp. 2d 339, 345 (D.N.J. 1999) (citations omitted) ("Mere disagreement with a court's decision normally should be raised through the appellate process and is inappropriate on a motion for [reconsideration].").

**III.   DECISION**

### A.     Randall's Motion for Reconsideration Is Denied

Randall argues the Court overlooked the express language in the Employee Secrecy, Intellectual Property, Non-Competition and Non-Solicitation Agreement (the "Agreement") between the parties regarding the restriction period, which should begin on the date Randall's employment with Plaintiffs terminates, *i.e.*, September 11, 2020, and runs for 18 months thereafter. (ECF No. 55-1 at 8–9.) Randall contends, by changing the start date of the restriction period to the effective date of the preliminary injunction, the Court effectively extended the restriction period for over 9 months and impermissibly rewrote the Agreement. (*Id*. at 9.) Randall adds the Court also overlooked the Temporary Restraining Order by Consent ("TRO") (ECF No. 14), under which the parties agreed Randall would not assume the Head of Robotics position with Smith & Nephew, and would otherwise not disclose or use any confidential information to which he had access while employed by Plaintiffs (*id*. at 9–10). Randall maintains, because of the TRO, Randall should be credited for the months that lapsed while the injunction proceedings ran their course, including the nearly 7 months that lapsed between the time when briefing was completed and the time the May Order was entered. (*Id*. at 9.) The Court declines to consider the above arguments by Randall.

A motion for reconsideration is "not an opportunity to argue what could have been, but was not, argued in the original set of moving and responsive papers." *Broad v. Home Depot U.S.A., Inc.*, Civ. A. No. 14-771, 2016 U.S. Dist. LEXIS 126066, at *1–2 (D.N.J. Sept. 16, 2016) (quoting *Bowers v. NCAA*, 130 F. Supp. 2d 610, 613 (D.N.J. 2001)); *see also VisionSoft Consulting, Inc. v. Cognitus Consulting, LLC*, Civ. A. No. 19-11526, 2020 U.S. Dist. LEXIS 169410, at *2 (D.N.J. Sept. 16, 2020) (quoting *P. Schoenfeld*, 161 F. Supp. 2d at 352) ("A motion for reconsideration 'may not be used to re-litigate old matters, nor to raise arguments or present evidence that could have been raised prior to the entry of judgment.'").

On October 30, 2020, in moving for the Motion for Preliminary Injunction, Plaintiffs submitted a Proposed Order for Preliminary Injunction, which sought to prohibit Randall, "for a period of eighteen (18) months *from the date of entry of this ORDER*," from assuming the Head of Robotics position or any other position with Smith & Nephew, "in which he could disadvantage Plaintiffs or advantage Smith & Nephew, Inc., by the disclosure or use of confidential information to which he had access while employed with the Plaintiffs." (ECF No. 38 at 2 (emphasis added).) Therefore, on November 6, 2020, when Randall filed a Sur-Reply (ECF No. 42) in opposition to Plaintiffs' Motion for Preliminary Injunction, Randall should have been aware of Plaintiffs' proposal of an 18-month restriction period that would start running from the entry of the May Order. Randall, in the Sur-Reply, could have objected to this proposal, which would certainly extend the restriction period set forth in the Agreement, and argued for a different starting date. But Randall failed to do so. "[B]y failing to address" Plaintiffs' proposed restriction period, Randall "waived the issue." *Broad*, 2016 U.S. Dist. LEXIS 126066, at *2 (citing *Samoles v. Lacey Twp.*, Civ. A. 12-3066, 2014 U.S. Dist. LEXIS 79211, 2014 WL 2602251, at *4 n.8 (D.N.J. June 11, 2014)). Accordingly, Randall's Motion for Reconsideration is **DENIED**.

### B. The Court Declines to Modify the Preliminary Injunction

Though Randall is not entitled to the Motion for Reconsideration, the Court may under its discretion implement Randall's request of modifying the preliminary injunction. *Everest Nat'l Ins. Co. v. Sutton*, Civ. A. No. 07-722, 2010 U.S. Dist. LEXIS 1572, at *5 (D.N.J. Jan. 8, 2010) (quoting *Favia v. Ind. Univ. of Pa.*, 7 F.3d 332, 340 (3d Cir. 1993)) ("When modifying a preliminary injunction, a court is charged with the exercise of the same discretion it exercised in granting or denying injunctive relief in the first place."). The Court "is authorized to make any changes in the injunction that are equitable in light of subsequent changes in the facts or the law, or for any other

good reason." *Id*. (quoting *Canal Auth. of State of Fla. v. Callaway*, 489 F.2d 567, 578 (5th Cir. 1974)). However, as illustrated below, the Court discerns no good reason to modify the restriction period set forth in the May Order.

Plaintiffs argue Section 5.1 of the Agreement is a tolling provision providing for a 36-month tolling period, which means the May Order is consistent with the Agreement as written. (ECF No. 60 at 6, 13.) Plaintiffs allege Randall's breach of the Agreement continues to this very day: on October 30, 2020, Randall unilaterally assumed the position of Vice President of Special Projects with Smith & Nephew, without providing information and satisfactory assurances to Plaintiffs that this alternative position complies with his contractual obligations under the Agreement. (*Id*. at 8.) Plaintiffs claim they have reasonably requested more detailed information relating to this position, but Randall and Smith & Nephew failed to provide such information, which violated Section 3.3 of the Agreement. (*Id*. 9–10.)

Randall asserts, on October 30, 2020, both he and Smith & Nephew provided written assurances to Plaintiffs regarding the Vice President of Special Projects position, but Plaintiffs took no affirmative action to prevent Randall from assuming the position. (ECF No. 61 at 4–5.) Randall argues Plaintiffs' inaction for more than eight months, until after the Motion for Reconsideration was filed, constitutes a waiver of any argument regarding the Vice President of Special Projects position.[1] (*Id*. at 5–6.) Randall maintains Plaintiffs' unreasonably withheld

---

[1] Randall offers no legal authority for his argument that Plaintiffs waived the issue of Randall's new position at Smith & Nephew. As a result, the Court declines to consider this argument. *See Del. Riverkeeper Network v. Del. River Basin Comm'n*, 300 F.R.D. 207, 212 (D.N.J. 2014) (declining to find the plaintiff waived an issue under certain circumstances, because the defendant "directed the [c]ourt to no legal authority to support its waiver argument, nor has it claimed to suffer prejudice as a result of [p]laintiffs' late-raised argument"); *Hilburn v. State Dep't of Corr.*, Civ. A. No. 07-6064, 2012 U.S. Dist. LEXIS 106536, at *91 (D.N.J. July 31, 2012) ("The absence of authority is fatal to [d]efendant's argument.").

6

consent to Randall's assumption of the position and acceptance of Randall's written assurance, thereby breaching the implied duty of good faith and fair dealing. (*Id*. at 6–7.) Randall stresses Section 3.3 does not specify the required contents of a written assurance beyond assuring that Randall will not be rendering any services which conflict with his obligations under the Agreement. (*Id*. at 7.) Randall insists Plaintiffs are estopped from using their breach of duty as a basis for extending the restrictive period. (*Id*. at 6.) Randall suggests Plaintiffs' request for certain detailed information of Randall's new position at Smith & Nephew was an attempt to access Smith & Nephew's confidential information to gain a competitive advantage, and reflects a motivation to use this lawsuit to punish Randall for having the audacity to leave Plaintiffs. (*Id*. at 8–9.) The Court disagrees.

Indeed, New Jersey courts generally do not extend the restriction period beyond what the non-compete agreement provides, even if the enjoined party violated the non-compete agreement. *See, e.g.*, *Jackson Hewitt, Inc. v. Barnes Enters.*, Civ. A. No. 10-05108, 2012 U.S. Dist. LEXIS 63784, at *12–13 (D.N.J. May 7, 2012) ("Enforcing a two year non-compete agreement from the date of this [c]ourt's [o]rder [for enforcing the agreement] would constitute an unwarranted extension of the [non-compete agreement's] terms."); *Vanguard Dealer Servs. LLC v. Scarano*, Civ. A. No. 2306-08T1, 2010 N.J. Super. Unpub. LEXIS 2107, at *17–18 (N.J. Super. Ct. App. Div. Aug. 24, 2010) (declining to extend the restrictive covenant in issuing an injunction, though the plaintiff "contend[ed] that it did not get the 'benefit of its bargain' from the restrictive covenant with defendant"); *Cmty. Hosp. Group, Inc. v. More*, 869 A.2d 884, 900 (N.J. 2005) (finding "no justification to extend the [non-compete] agreement beyond" "the two-year period for the term of the restrictive covenant," "[b]ecause restrictive covenants are not favored in the law," even though "[t]hat period ha[d] expired" during the litigation). However, under certain exceptional

7

circumstances, an extension may be justified. For example, the defendant's continued non-compete violations against a court order "might have warranted . . . an extension" beyond "the expiration date of the non-compete provision." *Mister Softee, Inc. v. Amanollahi*, Civ. A. No. 14-1687, 2016 U.S. Dist. LEXIS 136158, at *32 (D.N.J. Sept. 30, 2016) (citing *Mister Softee, Inc. v. Tsirkos*, Civ. A. No. 14-1975, 2015 WL 7458619, at *5 (S.D.N.Y. Nov. 23, 2015)); *see also Domt, Inc. v. Smikle*, Civ. A. No. 14-779, 2014 U.S. Dist. LEXIS 195843, at *6 (D.N.J. May 2, 2014) ("If [the defendants] violate this [o]rder, the 24 month non-compete period will be tolled until they are in compliance with this [o]rder."); *Jackson Hewitt, Inc. v. DJSG Utah Tax Serv., LLC*, Civ. A. Nos. 10-5330, 10-5108, 2013 U.S. Dist. LEXIS 79556, at *5–6 (D.N.J. June 5, 2013) (citing *Jackson Hewitt Inc. v. Childress*, Civ. A. No. 06-909, 2008 U.S. Dist. LEXIS 24460, at *30–31 (D.N.J. Mar. 27, 2008)) ("[T]his [c]ourt was justified in extending the injunction beyond the terms of the franchise agreement because [d]efendants, and those acting in concert with them, actively engaged in competition in violation of the franchise agreements and the [c]ourt's injunctions.").

Here, the Court need not determine whether the Agreement contains a tolling provision that possibly allows an extension of the restriction period, because Randall violated the TRO entered on October 5, 2020, which justifies extending the 18-month restriction period. The TRO, in addition to prohibiting Randall from taking any position at Smith & Nephew that would require him to breach the Agreement, also provides Randall "shall comply in all other respects with his obligations under the . . . Agreement." (ECF No. 14.) Therefore, the TRO requires Randall to comply with Section 3.3 of the Agreement. Pursuant to Section 3.3, "before [Randall] accept[s] the position" with a competitor like Smith & Nephew, Randall must provide "written assurances" to Plaintiffs that Randall "will not be rendering any services which conflict with the obligations" under the Agreement, and Plaintiff must have "accepted as satisfactory" such assurances. (ECF

8

No. 1, Ex. A ¶ 3.3.) As illustrated below, though Randall did provide Plaintiffs with a written assurance, he did not fully comply with Section 3.3, for two reasons.

First, Randall failed to timely provide Plaintiffs with the written assurance. Randall admits he and Smith & Nephew sent Plaintiffs written assurances on October 30, 2020. Randall's written assurance indicated he would serve the Vice President of Special Projects position with Smith & Nephew. (ECF No. 60-1 at 1.) Smith & Nephew's written assurance confirmed it would begin employing Randall in that position. (ECF No. 60-2 at 1.) The two written assurances did not seek consent from Plaintiffs on Randall's new position. In other words, when Randall sent the written assurance, he had already accepted the position. This is in violation of Section 3.3, which requires such written assurance be sent *before* Randall accepts a position with Smith & Nephew.

Second, Plaintiffs have not accepted as satisfactory Randall's written assurance. "[A] subjective test of performance governs the employer's resort to a satisfaction clause in an employment contract unless there is some language in the contract to suggest that the parties intended an objective standard." *Silvestri v. Optus Software*, 814 A.2d 602, 609 (N.J. 2003).[2] There is no such language in the Agreement.[3] Therefore, "[i]diosyncratic judgments as to what constitutes satisfactory performance are expected and should be permitted." *Silvestri*, 814 A.2d at

---

[2] *Silvestri* applied the subjective test of satisfaction to justify an employer's discharge of an employee and reject the employee's breach of contract claim against the employer, when the employer's dissatisfaction with the employee's work performance was found genuine. Though the factual scenario in *Silvestri* is different from this case, the Court finds *Silvestri* instructive to the extent it addresses an employer's satisfaction or dissatisfaction with an employee's performance of an employment contract.

[3] Section 3.3 does provide "[t]he written assurances must be sufficiently detailed to allow for an informed decision by [Plaintiffs] including job title, position description and responsibilities, location, geographical scope, and the identity of the organization or business unit and the person(s) to whom [Randall] will be reporting." (ECF No. 1, Ex. A ¶ 3.3.) This language could serve as an objective requirement for the written assurances, but it says nothing about a standard to determine the employer's satisfaction.

609. "The employer, not some hypothetical reasonable person, is best suited to determine if the employee's performance is satisfactory." *Id*. In other words, Plaintiffs' subjective dissatisfaction with Randall's written assurance suggests Randall's obligation under Section 3.3 has not been fulfilled.

Moreover, because Randall was "a high-level business manager" at Plaintiffs, "a subjective test is particularly appropriate to the flexibility needed by the owners and higher-level officers operating a *competitive* enterprise." *Id*. at 607 (citing Note, *Protecting At Will Employees from Wrongful Discharge: The Duty to Terminate Only in Good Faith*, 93 Harv. L. Rev. 1816, 1840–41 (1980)) (emphasis added). "When a manager has been hired to share responsibility for the success of a business entity, an employer is entitled to be highly personal and idiosyncratic in judging the employee's satisfactory performance in advancing the enterprise." *Id*. (citations omitted). Therefore, Plaintiffs' dissatisfaction is a significant consideration is evaluating Randall's compliance with the Agreement, which protects Plaintiffs' legitimate competitive interests.

Indeed, "[t]he subjective standard obliges the employer to act 'honestly in accordance with his duty of good faith and fair dealing.'" *Id*. (quoting *Beasley v. St. Mary's Hosp. of Centralia*, 558 N.E.2d 677, 682 (Ill. App. Ct. 1990)). But the Court does not find Plaintiffs breached that duty. Under the subject standard, "[t]he party to be satisfied is the sole judge of his or her satisfaction." *Id*. at 606 (quoting 13 *Williston on Contracts* § 38.23 (Lord ed. 2000) (hereinafter "*Williston*")). "If the party to be satisfied asserts in good faith that he or she is not satisfied, there can be no inquiry into the reasonableness of his or her attitude." *Id*. (quoting *Williston* § 38.23). Here, Plaintiffs requested from Randall and Smith & Nephew the information on: (1) "the safeguards Smith & Nephew will put in place to ensure that Mr. Randall is not involved in its robotics and digital surgery initiatives" (ECF No. 60-4 at 2); and (2) "measures Mr. Randall and Smith &

10

Nephew have taken to remove [Plaintiffs' confidential] material from Mr. Randall's possession, custody, and control before he takes any role with Smith & Nephew" (ECF No. 60-7 at 2). Randall and Smith & Nephew failed to provide such information, which is closely related to Randall's obligations under the Agreement in preventing the disclosure of Plaintiffs' confidences to a competitor. Therefore, Plaintiffs have asserted a good faith basis for their dissatisfaction with the written assurances. Further reasonableness inquiry on Plaintiffs' refusal to accept the written assurances is unwarranted.

Because Randall failed to provide Plaintiffs with written assurances satisfactory to Plaintiffs before accepting the Vice President of Special Projects position, he has violated Section 3.3 and, consequently, the TRO. As a result, an extension of the 18-month restriction period is justified. Accordingly, the Court declines to modify the restriction period set forth in the May Order.

### C. Plaintiffs Must Post a Bond in the Amount of $565,500

Plaintiffs claim they already posted a bond in the amount of $15,000 for the TRO, and the amount should not be increased for the preliminary injunction because Randall's financial security is not an issue. (ECF No. 56 at 1.) Randall insists a bond given pursuant to a TRO cannot be carried over to cover possible liabilities under a preliminary injunction. (ECF No. 57 at 2.) Randall proposes a bond in the amount equal to 27 months of Randall's salary and benefits for the Head of Robotics position with Smith & Nephew, *i.e.*, approximately $700,000, because the preliminary injunction has extended the original 18-month restriction period for 9 months. (*Id*. at 3.) The Court sets the amount of the bond as $565,500.

"Although the amount of the bond is left to the discretion of the court, the posting requirement is much less discretionary." *Zambelli Fireworks Mfg. Co. v. Wood*, 592 F.3d 412, 426

(3d Cir. 2010) (quoting *Frank's GMC Truck Ctr.*, Inc., 847 F.2d 100, 103 (3d Cir. 1988)). "Generally, a bond is a condition of preliminary injunctive relief." *Sprint Communs. Co. L.P. v. CAT Communs. Int'l, Inc.*, 335 F.3d 235, 239 (3d Cir. 2003). "[A] successful applicant for a preliminary injunction [must] post a bond, 'in such sum as the [district] court deems proper, for the payment of such costs and damages as may be incurred or suffered by any party who is found to have been wrongfully enjoined.'" *Id*. at 239–40 (quoting Fed. R. Civ. P. 65(c)). "[T]he injunction bond 'provides a fund to use to compensate incorrectly enjoined defendants.'" *Id*. at 240 (quoting *Instant Air Freight Co. v. C.F. Air Freight, Inc.*, 882 F.2d 797, 804 (3d Cir. 1989)). "[A] bond given pursuant to a [TRO] cannot be carried over to cover possible liability under a preliminary injunction." *Sandhills Glob., Inc. v. Garafola*, Civ. A. No. 19-20669, 2020 U.S. Dist. LEXIS 65553, at *41 (D.N.J. Apr. 10, 2020) (quoting *Steinberg v. Am. Bantam Car Co.*, 173 F.2d 179, 181 (3d Cir. 1949)).

     Randall's annual salary and benefits offered by Smith & Nephew for the Head of Robotics position include the $290,000 base salary and the incentive compensation of 30% of the salary. (ECF No. 35 at 36–37.) Because the preliminary injunction would impose an 18-month restriction period against Randall from the date the preliminary injunction takes effect, Randall would sustain damages in the amount of 18 months' of salary and benefits for the position if he is wrongfully enjoined. *See Matthews Int'l Corp. v. Lombardi*, Civ. A. No. 20-89, 2021 U.S. Dist. LEXIS 35616, at *43 n.15 (W.D. Pa. Feb. 25, 2021) (citations omitted) ("Because the [c]ourt is enforcing the restrictive covenants for two years, the [c]ourt calculates the bond by multiplying [the defendant's] expected-yearly salary by two."). Accordingly, the Court finds the proper amount of the bond should be: $290,000*(1+30%)*(18/12) = $565,500. Plaintiffs must post this amount in addition to the $15,000 bond already posted for the TRO.

## IV. CONCLUSION

For the reasons set forth above, Randall's Motion for Reconsideration is **DENIED**. The Court declines to modify the restriction period set forth in the May Order. Plaintiffs must post a bond in the amount of $565,500 for the preliminary injunction. An appropriate order follows.

Date: **July 26, 2021**          */s/ Brian R. Martinotti*
                                                    **HON. BRIAN R. MARTINOTTI**
                                                    **UNITED STATES DISTRICT JUDGE**